## HERCULES GASOLINE CO., Inc., v. COMMISSIONER OF INTERNAL REVENUE.

### No. 11211.

Circuit Court of Appeals, Fifth Circuit.

March 1, 1945.

Rehearing Denied April 19, 1945.

HUTCHESON, Circuit Judge, dissenting.

———◆———

Melvin F. Johnson, of Shreveport, La., for petitioner.

Maryhelen Wigle, Sewall Key, and A. F. Prescott, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and John M. Morawski, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

Section 26(c) (1) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 836, relieves corporations from taxes upon undistributed profits to the extent that such profits could not be distributed without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly dealt with the payment of dividends. Petitioner's transferor, prior to May 1, 1936, issued preferred-stock certificates, and incorporated therein by reference an article of its charter providing that no dividend should be paid on the common stock of the corporation until all the preferred stock had been redeemed and retired. The certificates provided for cumulative dividends, at 8% per annum, payable whenever declared out of surplus net profits.

The two principal issues presented are (1) whether the preferred-stock certificates were contracts within the purview of Sec-

tion 26(c) (1), supra, and (2) whether the corporation could deduct, as interest, the dividends paid on the preferred stock during the tax years.

The second question requires little comment. The mere fact that some of the shares were issued to creditors in payment of corporate debts does not serve to convert dividends into interest. The respective terms have acquired definite meanings. Interest is a fixed percentage premium paid on a time basis for the use or detention of money. It becomes a debt merely upon the passing of time, either by the terms of the primary obligation or by operation of law. A dividend, on the contrary, does not become a debt until profits have been earned and a declaration of dividends is made. It is a distribution of profits to adventurers in a common enterprise.[1] Here the corporate creditors became corporate stockholders by accepting stock, and the distributions to them were dividends declared from profits rather than payments upon corporate debts.[2] Such distributions were not deductible as interest.

The solution to the other question is not so plain. Section 26(c) (1) has been construed in parallel or closely related cases in several other circuits,[3] but with so balanced a divergence of opinion that those decisions are not particularly helpful. We think the reasoning and pronouncements of the Supreme Court in the leading case of Helvering v. Northwest Steel Mills, 311 U.S. 46, 61 S.Ct. 109, 113, 85 L.Ed. 29, when analyzed and applied to the facts present here, require an affirmance of the Tax Court's decision disallowing the credit.

While the precise question in the Northwest Steel Mills case was whether the provisions of a state statute could be read into a corporate charter so as to form a contract containing the restrictive provision required by Section 26(c) (1), much of what was said is applicable here where we are concerned with the provisions of stock cer-

tificates containing by reference certain charter provisions. The court in the Steel Mills case, construing the statute strictly, held that the prohibition against dividend payments must be expressly written in the executed contract, and could not be incorporated therein by reference, implication, or otherwise. Here the share certificates, upon which complete reliance is placed, did not include the prohibition other than by reference to the charter. The court's opinion also has been construed to hold that a corporate charter, though it contains the formal requisites of a contract, is not such a contract as was contemplated by Congress in the enactment of the statute.[4] It may be that the very question before us was decided adversely to the taxpayer in the Northwest Steel Mills case, as footnote 17 of the opinion recites: "Respondent contended that the stock certificates satisfied the statutory requisites even if the charter did not; but what we have here said with respect to the charter applies equally to the certificates."

The holding of the opinion that we find most persuasive, however, is that the credit was intended to apply only to corporations contractually obligated to set earnings aside for the *payment of debts*. The shareholders of a corporation are not its *creditors*; they are its owners. As the court said in Warren v. King, 108 U.S. 389, 399, 2 S.Ct. 789, 798, 27 L.Ed. 769:

"Whatever position the holders of preferred certificates occupied before they accepted preferred stock, whatever special right of lien they had, they became corporators, proprietors, shareholders, and abandoned the position of creditors, and took up towards existing and future creditors the same position which every stockholder in a corporation occupies towards existing and future creditors. His chance of gain, by the operations of the corporation, throws on him, as respects creditors, the entire risk of the loss of his share of the capital, which must go to satisfy the creditors in case of misfortune. He cannot

[1] The distinction is clearly drawn in Warren v. King, 108 U.S. 389, 2 S.Ct. 789, 27 L.Ed. 769.

[2] The allowance of a deduction under Section 23(b) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 827, is only with respect to interest paid or accrued within the taxable year *on indebtedness*.

[3] Lehigh Structural Steel Co. v. Commissioner, 3 Cir., 127 F.2d 67; Metal Spe-

cialty Co. v. Commissioner, 6 Cir., 128 F. 2d 259; Warren Tel. Co. v. Commissioner, 6 Cir., 128 F.2d 503; Elliott Addressing Machine Co. v. Commissioner, 1 Cir., 131 F.2d 700; Monarch Theatres v. Helvering, 2 Cir., 137 F.2d 588; Rex-Hanover Mills Co. v. United States, Ct.Cl., 53 F. Supp. 235.

[4] Warren Tel. Co. v. Commissioner, 6 Cir., 128 F.2d 503.

974

be both creditor and debtor, by virtue of his ownership of stock."

We are therefore of the opinion that the stock certificates were not contracts within the provisions of Section 26(c) (1). The minor contentions that the 1937 settlement was res judicata, and that petitioner's transferor was a deficit corporation, are without foundation in the record, and the decision of the Tax Court is

Affirmed.

HUTCHESON, Circuit Judge (dissenting).

I dissent from the conclusion of the majority that the Taxpayer is not entitled to the credit it claimed. I particularly dissent from the reasoning on which that conclusion was based. As I understand the opinion, it is bottomed on a dictum contained in an opinion of the Supreme Court which decided an entirely different question arising on an entirely different set of facts. from that presented here. I recognize, of course, that the rule of stare decisis binds us to follow that court in respect of things decided by it. I know of no rule of stare "dictis" which binds us to follow it in respect of things merely said by it. Indeed, I understand the rule as established in our law to be quite the contrary. It is true that some of the federal courts, the Sixth Circuit in a modified, the First Circuit[1] in an all out way, have, in the role of crystal gazers, laid claim to a prescience, indeed a clairvoyance as to judicial things to come, commonly not supposed to be required equipment for the task of judging. Other courts, notably the Third Circuit,[2] the Court of Claims,[3] and

the Second Circuit,[4] following the established rule that what is decided, not what is said by the Supreme Court, binds, have taken a different view of their obligation to foretell what next that court may decide. All that was decided in the Northwest Steel Mills case was that to entitle to the credit there must be a written contract executed by the corporation which expressly deals with the payment of dividends and that there was no such contract exhibited but only a statute prohibiting deficit corporations from paying dividends.[5] There is no question here of a prohibitory law. What prevents the payment of dividends here is an express and binding contract evidenced by the stock certificates completely and entirely forbidding the payment of dividends. It is settled in this circuit[6] and in the Supreme Court,[7] as we said of a companion section in American Liberty Pipe Line Co. v. Commissioner, 5 Cir., 143 F.2d 873, 874:

"* * * wherever this section and its companion, the dividends paid credit section, have been up for decision, the courts have made it plain, as well where such construction advantaged, as where it disadvantaged, the taxpayer, that the statute is plainly and clearly written, and that it must be applied as written. It may not be enlarged or restricted by a construction which, under the guise of giving effect to its supposed intent and purpose, adds to or takes away from its terms."

The application of that principle of construction here leaves in no doubt, I think, that the taxpayer was entitled to the credit that he claimed, and that the judgment of the Tax Court was wrong. I dissent from its affirmance.

[1] In Elliott Addressing Machine Co. v. Commissioner, 1 Cir., 131 F.2d 700, 702, that court, without explaining how the Supreme Court could, without legislating, have gone farther than the specified facts of the case entitled them to go, said: "From our reading of Helvering v. Northwest Steel Mills, 311 U.S. 46, 61 S.Ct. 109, 85 L.Ed. 29, we are of the opinion that the court intended to go farther than the specific facts in that case."

[2] Lehigh Structural Steel Co. v. Commissioner, 3 Cir., 127 F.2d 67; Budd International Corporation v. Commissioner, 3 Cir., 143 F.2d 784, certiorari denied, 65 S.Ct. 562.

[3] Rex Hanover Mills v. United States, Ct.Cl., 53 F.Supp. 235.

[4] Monarch Theatres v. Helvering, 2 Cir., 137 F.2d 588, 590. In that case the court

said: "The often quoted language of Mr. Justice Black in Helvering v. Northwest Steel Rolling Mills * * * was used discursively and by way of example; it is not to be understood as laying down absolute doctrine."

[5] The Court said: "What prohibited respondent from distributing dividends was not the provision of an executed written contract expressly dealing with the payment of dividends. On the contrary, what prohibited respondent from paying dividends was a valid law of the State of Washington." 311 U.S. at page 52, 61 S. Ct. at page 113, 85 L.Ed. 29.

[6] Sabine Co. v. Commissioner, 5 Cir., 128 F.2d 945.

[7] Helvering v. Credit Alliance Co., 316 U.S. 107, 62 S.Ct. 989, 86 L.Ed. 1307.